Marc J. Randazza (CA SBN 269535)
Alex J. Shepard (CA SBN 29058)
Jay M. Wolman (*pro hac vice* forthcoming)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
Fax: 305-437-7662
ecf@randazza.com

*Attorney for Plaintiffs*
*T. Greg Doucette & Law Offices of*
*T. Greg Doucette, PLLC*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **THOMAS GREGORY DOUCETTE,** et. al., | Case №.: 4:19-cv-08148-HSG |
| Plaintiffs, | **OPPOSITION TO DEFENDANTS RONALD KEVIN STONE'S AND NORTH CAROLINA DIVISION SONS OF CONFEDERATE VETERANS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| vs. | |
| **RONALD KEVIN STONE**, et. al., | |
| Defendants. | |
| | Date:        TBD |
| | Time:        TBD |
| | Courtroom:  2 |
| | Judge:       Hon. Haywood S. Gilliam, Jr. |

Plaintiffs T. Greg Doucette ("Mr. Doucette") and the Law Offices of T. Greg Doucette, PLLC ("TGDLaw"), (collectively "Plaintiffs") oppose Defendants Ronald Kevin Stone's and North Carolina Division Sons of Confederate Veterans ("NCSCV") (collectively, "Defendants") Motion to Dismiss for Lack of Personal Jurisdiction.

RANDAZZA | LEGAL GROUP

## TABLE OF CONTENTS

**1.0   INTRODUCTION** .................................................................................. 1

**2.0   STATEMENT OF ISSUES TO BE DECIDED** ............................................ 1

**3.0   STATEMENT OF RELEVANT FACTS** ...................................................... 2

**4.0   LEGAL STANDARD** ............................................................................ 4

**5.0   ARGUMENT** ..................................................................................... 5

   5.1   DEFENDANTS PURPOSEFULLY DIRECTED THEIR CONDUCT TOWARDS CALIFORNIA ........... 5

      5.1.1   Defendants engaged in intentional acts ................................................ 7

      5.1.2   Defendants expressly aimed their intentional acts at California ........... 7

      5.1.3   Defendants' intentional acts caused harm that Defendants knew was likely to be suffered in California ................................................. 10

   5.2   PLAINTIFF'S CLAIM ARISES OUT OF DEFENDANTS' CONTACTS WITH CALIFORNIA .......... 11

   5.3   EXERCISING PERSONAL JURISDICTION OVER DEFENDANTS WOULD BE REASONABLE ...... 11

      5.3.1   Purposeful interjection .......................................................................... 12

      5.3.2   Burden on the Defendants .................................................................... 13

      5.3.3   Extent of conflict with the sovereignty of North Carolina ..................... 13

      5.3.4   California's interest in adjudicating the dispute ..................................... 14

      5.3.5   The most efficient judicial resolution of the controversy ....................... 14

      5.3.6   The importance of California to Plaintiffs' interest in convenient and effective relief ......................................................................... 14

      5.3.7   The existence of an alternative forum ................................................... 15

   5.4   DEFENDANTS CONSENTED TO PERSONAL JURISDICTION IN CALIFORNIA ...................... 15

   5.5   THIS COURT IS THE MOST CONVENIENT FORUM FOR THIS DISPUTE ................... 17

**6.0   CONCLUSION** ................................................................................. 19

## TABLE OF AUTHORITIES

**CASES**

*Allen v. ConAgra Foods, Inc.*,
    2018 U.S. Dist. LEXIS 208196 (N.D. Cal. Dec. 10, 2018) .................................4

*Automattic v. Steiner*,
    82 F. Supp. 3d 1011 (N.D. Cal. 2015) .................................................6

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) .....................................................7

*Binbit Arg., S.A. v. Doe*,
    2019 U.S. Dist. LEXIS 203477 (N. D. Cal. Nov. 22, 2019)...........................16

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...........................................................5, 11

*Calder v. Jones*,
    465 U.S. 783 (1984) ............................................................5, 7

*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011) .....................................................17

*Caruth v. International Psychoanalytical Ass'n*,
    59 F.3d 126 (9th Cir. 1995) .......................................................13

*Corporate Inv. Business Brokers v. Melcher*,
    824 F.2d 786 (9th Cir. 1987) ..................................................12, 14

*Datatech Ent. LLC v. FF Magnat Ltd.*,
    2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sept. 14, 2012) ...........................7

*Doe v. Geller*,
    533 F. Supp. 2d 996 (N.D. Cal. 2008) ........................................6, 9, 13

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) .....................................................5

*Fiore v. Walden*,
    688 F.3d 558 (9th Cir. 2012) .....................................................10

*Hungerstation LLC v. Fast Choice LLC*,
    2020 U.S. Dist. LEXIS 5442 (N. D. Cal. Jan. 13, 2020) ...........................5, 6

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
   583 F.3d 656 (9th Cir. 2009) ...............................................................17, 18

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ..............................................11, 12, 13, 14

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ......................................17

*Rain Design, Inc. v. Spinido, Inc.*,
   No. 17-cv-03681-HSG, 2019 U.S. Dist. LEXIS 21087 (N.D. Cal. Feb. 8, 2019) ..........18

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ...............................................................17

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ...........................................................6, 12

*SEC v. Ross*,
   504 F.3d 1130 (9th Cir. 2007) ...............................................................16

*Shute v. Carnival Cruise Lines*,
   897 F.2d 377 (9th Cir. 1990) ...............................................................11

*Sinatra v. Nat'l Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) ...............................................................12

*Twitch Interactive, Inc. v. Johnston*,
   2018 U.S. Dist. LEXIS 184300 (N.D. Cal. Jan. 22, 2018) .............................16

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ...........................................................................7

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
   704 F.3d 668 (9th Cir. 2012) ...................................................................8

**STATUTES**

17 U.S.C. § 512(f) ...................................................................................6

28 U.S.C. § 1404(a) ..............................................................................17

28 U.S.C. § 1631 ..................................................................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.0   INTRODUCTION

Defendants perpetrated a fraud on a court, where the University of North Carolina entered into a sham "consent judgment" as political cover to give Defendants $2.5 million and a controversial statue honoring the Confederate solders.  Mr. Doucette, an active member of the legal community, learned of this fraud on the court and shared its details with the general public.  Plaintiffs used Dropbox, headquartered in San Francisco, California, to host and share proof of Defendants' fraud, including an email letter from R. Kevin Stone to the membership of the NC Chapter of the Sons of Confederate Veterans admitting that the suit was baseless.  In an attempt to conceal their fraud from public scrutiny, Defendants sent an unlawful takedown request under the Digital Millennium Copyright Act ("DMCA") to Dropbox, claiming that Plaintiffs' sharing Stone's confession of misconduct constituted copyright infringement. Defendants knew this notice made material misrepresentations; they could not have believed in good faith that Plaintiffs' use of this evidence was not a fair use. This deception was successful and Dropbox disabled sharing on Plaintiffs' account, preventing them from sharing proof of Defendants' fraud (or any other documents).

### 2.0   STATEMENT OF ISSUES TO BE DECIDED

- Whether the Court may assert personal jurisdiction over Defendants Ronald Kevin Stone and NCSCV.

- Whether the Court should transfer this case to the Middle District of North Carolina under the doctrine of *forum non conveniens* if the Court may assert personal jurisdiction over Defendants.

## 3.0   STATEMENT OF RELEVANT FACTS

Mr. Doucette is an attorney who often shares legal news through his law firm, The Law Offices of T. Greg Doucette, PLLC ("TGDLaw"). (Doc. No. 1 at ¶¶ 18-19.)  Plaintiffs have an account on Dropbox, an online file hosting service that allows the storage and transmission of digital files.  (*Id*. at ¶¶ 20-21.)  Dropbox is headquartered in San Francisco, California.  (Doc. No. 1 at ¶ 14; Dropbox web site "Office" page, attached as **Exhibit 1**.)[1]  Dropbox's terms of use, to which both Plaintiffs and Defendants consented,[2] calls for claims to be filed in this jurisdiction. (*See* Dropbox Terms of Service, attached as **Exhibit 2**.)[3]

The University of North Carolina had a statue known as "Silent Sam," commemorating the Confederacy, prominently placed at the gates of the institution, since 1913.  Sam's defenders claimed that he was a non-racist symbol of "history." However, in 2011 it was revealed that,[4] when Silent Sam was unveiled in 1913, KKK supporter Julian Carr announced that the Confederate soldiers it honored had saved "the very life of the Anglo Saxon race in the South," and told the following story:

> One hundred yards from where we stand, less than ninety days perhaps after my return from Appomattox, I horse-whipped a negro wench until her skirts hung in shreds, because upon the streets of this quiet village she had publicly insulted and maligned a Southern lady,

---

[1]   Available at: https://www.dropbox.com/jobs/teams/office (last accessed Feb. 27, 2020.)

[2]   As shown by Defendant Stone's declaration, Defendant NCSCV's Chief of Staff Matthew McGuin created an account on December 14, 2019, proof that NCSCV also agreed to Dropbox's Terms of Service. (*See* Doc. No. 9-1 at ¶¶ 9 & 12, Exhibit D.)

[3]   Available at: https://www.dropbox.com/terms (last accessed Feb. 27, 2020).

[4]   *See* Carr, Adam "Why Silent Sam was built:  A historian's perspective," THE DAILY TARHEEL (Jan. 20, 2011), available at https://www.dailytarheel.com/article/2011/01/why_silent_sam_was_built_a_historians_perspective (last accessed Feb. 27, 2020).

1    and then rushed for protection to these University buildings where
2    was stationed a garrison of 100 Federal soldiers.  I performed the
     pleasing duty in the immediate presence of the entire garrison, and
3    for thirty nights afterwards slept with a double-barrel shotgun under
     my head.

4    (Doc. No. 1 at ¶ 3.)

5        Ironically, this was the speech given as a sheet was *removed* from Silent

6    Sam.   As one metaphor for the Ku Klux Klan was removed, the statue was

7    dedicated with the spirit of bigotry for all time – or at least until some members of

8    the community, enraged by this revelation, brought it down.

9        On August 20, 2018, protesters tore Silent Sam down, and UNC did not

10   restore the statue to its former place.  (*Id.* at ¶¶ 24-25, 29.)

11       On November 27, 2019, NCSCV filed a lengthy complaint against UNC,

12   initiating the case *NC Division Sons of Confederate Veterans v. university of North*

13   *Carolin at Chapel Hill and University of North Carolina Board of Governors*, Case

14   No. 19 CVS 1579 (Orange Cty., N.C. Sup. Ct.) (the "UNC Case").  (*Id.* at ¶ 34; Doc.

15   No. 1-1.)  Within 7 minutes of this filing, UNC filed an answer to the complaint, and

16   a judge signed a consent judgment between the parties by which UNC agreed

17   to pay NCSCV $2.5 million and deliver Silent Sam to NCSCV.  (Doc. No. 1 at ¶ 30;

18   Doc. No. 1-1.)  It is apparent from these filings that UNC officials had already

19   approved the transfer of funds and Silent Sam prior to NCSCV filing suit, and

20   without waiting for the full Board of Governors to approve the settlement, as was

21   required by law, a committee approved it.  (Doc. No. 1 at ¶ 37; Doc. No. 1-1.)

22       After Plaintiffs uploaded the docket entries in the UNC Case to their

23   Dropbox account and shared them online, a member of NCSCV sent

24   Mr. Doucette a "victory proclamation" from Defendant Stone on December 2,

25   2019.  (Doc. No. 1 at ¶ 38.)  This proclamation spelled out clearly that NCSCV knew

26   it did not have standing to bring its claims against UNC and was aware it had no

27

RANDAZZA | LEGAL GROUP

1  chance of prevailing due to the issue of standing, yet decided to bring suit against

2  UNC anyway.[5]  It appears NCSCV had improper communications with officers

3  and Board of Governors members of UNC, who did not disclose to necessary

4  stakeholders (including the public) that this plan was in the works, by which these

5  UNC members were willing to abdicate their fiduciary duty immediately.  (Doc.

6  No. 1 at ¶ 41; Doc. No. 1-2.)  Plaintiffs uploaded this document to their Dropbox

7  account and shared it online.  (Doc. No. 1 at ¶¶ 38-39.)

8      Within hours, Defendants sent Dropbox a takedown request to Dropbox, in

9  this district, under the DMCA, demanding that Dropbox remove access to the

10  victory proclamation.  (Doc. No. 1 at ¶¶ 42-45; Doc. No. 1-3; Doc. No. 9-1 at 5.)  In

11  response to the DMCA request, Dropbox disabled access to the victory

12  proclamation and disabled Plaintiffs' ability to share anything through their

13  Dropbox account.  (Doc. No. 1 at ¶¶ 51-52; Doc. No. 1-3.)

14  **4.0  LEGAL STANDARD**

15      There are two forms of personal jurisdiction: general and specific.  Plaintiffs

16  do not assert Defendants are subject to general personal jurisdiction.

17      Defendants are, however, subject to specific personal jurisdiction.

18  California's long-arm statute is co-extensive with the Federal Constitution, and so

19  the only relevant analysis is under the Federal Constitution.  *Allen v. ConAgra*

20  *Foods, Inc.*, 2018 U.S. Dist. LEXIS 208196, *7 (N.D. Cal. Dec. 10, 2018).  The propriety

21  of exercising personal jurisdiction over a non-resident defendant involves a three-

22  factor analysis:

23      The non-resident defendant must purposefully direct his activities

24      or consummate some transaction with the forum or resident

25  ―――――――――――――――――

26  [5]   Once the court was apprised of the lack of standing, it vacated the
consent judgment and dismissed the case.  (*See* Order dismissing UNC Case,

27  attached as **Exhibit 3**.)

RANDAZZA | LEGAL GROUP

thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(1) The claim must be one which arises out of or relates to the defenadnt's forum-related activities; and

(2) The exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Dole Food Company, Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).  Upon the plaintiff satisfying the first two prongs, the defendant must "present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

Though the Court may not accept the truth of claims in Plaintiffs' Complaint if contradicted by an affidavit or declaration of Defendants at this stage, it "must resolve conflicts between the facts contained in the parties' affidavits in plaintiff's favor."  *Hungerstation LLC v. Fast Choice LLC*, 2020 U.S. Dist. LEXIS 5442, *6 (N. D. Cal. Jan. 13, 2020).  The facts indicate that Defendants are subject to personal jurisdiction in this Court.

**5.0   ARGUMENT**

**5.1   Defendants Purposefully Directed Their Conduct Towards California**

When Defendants sent their DMCA Takedown Notice to Dropbox, they knew or should have known that they were purposely directing it to California, expecting that action be taken in California, and limiting Plaintiffs' ability to use its property held in California.  Plaintiffs recognize that they must establish that Defendants purposefully directed activities towards California.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Purposeful direction occurs when the defendant directed actions toward the forum that were performed outside the forum.  *Id.* at 802-03.

1    For intentional torts, courts in the Ninth Circuit apply the effects test

2    established in *Calder v. Jones* in examining purposeful direction of a defendant's

3    activities toward a forum.  *See Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *Dole*

4    *Food Co., Inc. v.* Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).  Here, Plaintiffs' claims

5    for declaratory relief and violation of 17 U.S.C. § 512(f).  Copyright-related claims

6    are properly analyzed under the *Calder* test.  *See Brayton Purcell LLP v. Recordon*

7    *& Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *Rio Props., Inc. v. Rio Int'l Interlink*,

8    284 F.3d 1007, 1019 (9th Cir. 2002).  This Court in *Automattic v. Steiner*, 82 F. Supp.

9    3d 1011, 1023 (N.D. Cal. 2015) found that this analysis was best suited for a 17

10    U.S.C. § 512(f) claim, as a "claim of misrepresentation under the DMCA is a 'tort-

11    like cause of action.'"

12    Purposeful direction under the *Calder* effects test "'requires that the

13    defendant allegedly have (1) committed an intentional act, (2) expressly aimed

14    at the forum state, (3) causing harm that the defendant knows is likely to be

15    suffered in the forum state.'"  *Schwarzenegger*, 374 F.3d at 803.

16    This is not a case in which the argument is merely that Defendants accessed

17    servers owned by third parties that happened to be based in California.  *Contrast*

18    *Hungerstation LLC v. Fast Choice LLC*, No. 19-cv-05861-HSG, 2020 U.S. Dist. LEXIS

19    5442, at *13-14 (N.D. Cal. Jan. 13, 2020).  Here, as part of their scheme to commit

20    fraud on the court and wrongly obtain $2.5 million, Defendants targeted a

21    California company and served it with a demand under Federal law directing it

22    to remove, spoliate, and conceal evidence.  It is, also, as discussed below, a case

23    where all parties consented to personal jurisdiction in California.

24    Although Defendants assert there is no purposeful direction under *Calder*,

25    the only case they cite for this proposition  explicitly declined to make a finding

26    as to whether the defendant engaged in purposeful direction when it sent a

27

DMCA takedown notice to YouTube. *Doe v. Geller*, 533 F. Supp. 2d 996, 1006 (N.D. Cal. 2008) ("The court does not rest its decision on purposeful direction grounds, however, because that body of precedent does not apply easily to the facts here.")  Although the *Geller* Court declined to make a decision, the elements in *Calder* are met:  (1) the sending of a DMCA Takedown Notice is an intentional act; (2) the notice was expressly aimed at Dropbox, which is based in California; and (3) Defendants knew the harm would be suffered in California as Plaintiffs' California-based account would be limited or disabled as a result thereof.

### 5.1.1  Defendants engaged in intentional acts

*Intent* under *Calder* is construed as "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806.  This element is "is broadly construed, and can be met by the mere operation of a website." *Datatech Ent. LLC v. FF Magnat Ltd.*, 2012 U.S. Dist. LEXIS 131711, *7 (N.D. Cal. Sept. 14, 2012); *see Brayton*, 606 F.3d at 1129.  The focus of this requirement is "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton*, 606 F.3d at 1128.

Defendants' intentional act was the transmission of the fraudulent DMCA complaint to Dropbox.  Dropbox is headquartered in San Francisco, California. (Doc. No. 1 at ¶ 14; **Exhibit 1**.)  Plaintiffs adequately allege that Defendants' transmission of the DMCA complaint was intentional, and that they knew it contained misrepresentations when they sent it.  (Doc. No. 1 at ¶¶ 64-70.)  This meets the intentional act requirement.

### 5.1.2  Defendants expressly aimed their intentional acts at California

Regarding express aiming, this Court should examine Defendants' contacts with the forum, along with their targeting of Plaintiffs' California Dropbox account.

RANDAZZA | LEGAL GROUP

1   *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-70 (9th Cir. 2017)

2   (*citing Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).  While the conventional

3   example of express aiming involves directing conduct at a plaintiff's place of

4   residence, nothing in cases involving the Internet limit the exercise of personal

5   jurisdiction to such scenarios.  The primary requirement is that there be "something

6   more" than an act with foreseeable effects in the forum state.  *Washington Shoe*

7   *Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012).

8         Plaintiffs' claims are based on Defendants taking the deliberate action of

9   transmitting a fraudulent DMCA notice to Dropbox, headquartered in California.

10   They requested that Dropbox remove the "victory proclamation" from Plaintiffs'

11   Dropbox account, which it did.  To reach the form appearing at Doc. No. 9-1,

12   p. 5, one first encounters a form specifically explaining that Dropbox's DMCA

13   Agent is located in California:

DMCA Notice of Alleged Infringement ("**Notice**")

1. Identify the copyrighted work that you claim has been infringed, or - if multiple copyrighted works are covered by this Notice - you may provide a representative list of the copyrighted works that you claim have been infringed.

2. Identify the material or link you claim is infringing (or the subject of infringing activity) and to which access is to be disabled, including at a minimum, if applicable, the URL of the link shown on the Site or the exact location where such material may be found.

3. Provide your company affiliation (if applicable), mailing address, telephone number, and, if available, email address.

4. Include both of the following statements in the body of the Notice:
   - "I hereby state that I have a good faith belief that the disputed use of the copyrighted material is not authorized by the copyright owner, its agent, or the law (e.g., as a fair use)."
   - "I hereby state that the information in this Notice is accurate and, under penalty of perjury, that I am the owner, or authorized to act on behalf of, the owner, of the copyright or of an exclusive right under the copyright that is allegedly infringed."

5. Provide your full legal name and your electronic or physical signature.

Deliver this Notice, with all items completed, to Dropbox's Designated Copyright Agent:

Copyright Agent
Dropbox Inc.
333 Brannan Street
San Francisco, CA 94107

23   (Dropbox DMCA Policy page, attached as **<u>Exhibit 4</u>**.)[6]  Similarly, Defendants were

24   on notice that Dropbox's agent was in California through the registration of that

26       [6]   Available at: https://www.dropbox.com/terms#dmca (last accessed Feb.

27   27, 2020).

RANDAZZA | LEGAL GROUP

agent with the U.S. Copyright Office, a predicate for the provisions of the DMCA to apply at all:

| Service Provider/Designated Agent Information | |
|---|---|
| Service Provider: | Dropbox, Inc.<br>1800 Owens Street<br>San Francisco, CA 94158 |
| Designated Agent: | Content Safety Manager<br>Dropbox, Inc.<br>1800 Owens Street<br>San Francisco, CA 94158<br>Phone: 415-986-7057<br>Email: copyright@dropbox.com |
| Status: | Active |
| Effective: | September 2, 2019 to Present |

(Dropbox DMCA agent information, attached as **Exhibit 5**;[7] and *see* 17 U.S.C. § 512(c)(2).)

By making material misrepresentations to Dropbox, with the specific expectation that Dropbox would restrict Plaintiffs' account, thereby causing harm to Plaintiffs, Defendants expressly aimed their acts at California. Whether Defendants were conscious of the fact that a Dropbox employee specifically located in California would process their DMCA request is irrelevant; Dropbox is headquartered in California, and Defendants knew or should have known that their notice was aimed at California.

Defendants attempt to analogize the facts here to those in *Geller* (which did not find a lack of purposeful direction), but misses a crucial distinction. *Geller* was a run-of-the-mill infringement claim where the owner of a video clip sent a takedown notice to YouTube. Although the YouTube user, like Plaintiffs here, also

---

[7]   Available at https://dmca.copyright.gov/osp/publish/history.html?search=dropbox&id=3c0075cdd377972b704125dcb5a44df5 (last accessed Feb. 27, 2020).

argued that the takedown notice was sent in bad faith, the copyright owner in *Geller* was not making material misrepresentations to YouTube as part of a scheme to commit a fraud.  Defendants did not simply make a bad faith DMCA takedown request.  Instead, they invoked the DMCA and sent the improper notice to California as part of their enterprise to commit fraud on the court and improperly obtain $2.5 million in misbegotten funds.  Using a company headquartered in California as an essential part of concealing their scheme to defraud the North Carolina court places this case in an entirely different factual context.  No comparable facts existed in *Geller*, which was a run-of-the-mill misrepresentation claim under 17 U.S.C. § 512(f).

### 5.1.3  Defendants' intentional acts caused harm that Defendants knew was likely to be suffered in California

When examining whether Plaintiffs were harmed in California, "the foreseeable-harm element is satisfied when defendant's intentional act has foreseeable effects in the forum.  If a jurisdictional sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Fiore v. Walden*, 688 F.3d 558, 581 (9th Cir. 2012) (internal citations and quotation marks omitted).  A sufficient amount of harm was suffered, foreseeably, in California.

Defendants sent their bad-faith DMCA notice to Dropbox, headquartered in California, whose DMCA Agent was known to be in California, with the intent of making Dropbox remove content posted by Plaintiffs on the Dropbox service in California.  (Doc. No. 9-1 at 5.)  Dropbox then, in response to this bad-faith complaint, disabled sharing on Plaintiffs' California-based Dropbox account, causing Plaintiffs harm in the form of not being able to share the victory

RANDAZZA | LEGAL GROUP

proclamation and losing their California-based and regulated asset,[8] for which they paid a $45 monthly fee to maintain.  (Doc. No. 1 at ¶¶ 51-53.)  The harm resulting from Defendants' conduct was in the form of Dropbox taking action against Plaintiffs' account, which occurred in California.

### 5.2   Plaintiff's Claim Arises Out of Defendants' Contacts with California

Plaintiffs must also show that their claims arise out of or relate to Defendants' forum-related activities.  *Schwarzenegger*, 374 F.3d at 802.  A claim arises from forum-related activities if the plaintiff "would not have been injured 'but for'" the defendant's conduct directed toward the forum.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).  The "'arising out of' requirement" should not be read restrictively; rather, the "but for" test merely "preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum" and "preserves the essential distinction between general and specific jurisdiction." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *overruled on other grounds by* 499 U.S. 585.

There is no question that Plaintiffs' claims arise out of Defendants' false DMCA claim to Dropbox, and Defendants do not dispute this.

### 5.3   Exercising Personal Jurisdiction Over Defendants Would be Reasonable

Where, as here, a plaintiff can satisfy the first two requirements for the assertion of personal jurisdiction against a defendant, "the forum's exercise of jurisdiction is presumptively reasonable." *Carnival Cruise Lines*, 897 F.2d at 386. Then, the defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Rudzewicz*, 471

---

[8]  Plaintiffs' account is and was governed by the laws of California. (*See* **Exhibit 2**.)

RANDAZZA | LEGAL GROUP

U.S. at 477; *see Schwarzenegger*, 374 F.3d at 802.  The assertion of jurisdiction is unreasonable if it fails to comport with "fair play and substantial justice." *Rudzewicz*, 471 U.S. at 476.   Courts examine seven factors to determine reasonableness:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Rio,* 284 F.3d at 1021.  No single factor is dispositive, so a court must balance all factors. *See id*. However, some factors may weigh less heavily depending on the facts of the case.  *See, e.g., Panavision*, 141 F.3d at 1323-24 (finding that fifth factor is no longer weighed heavily).   Here, each factor weighs in favor of asserting jurisdiction over Defendants.

### 5.3.1  Purposeful interjection

Defendants purposefully interjected themselves into California.  This factor "is analogous to the purposeful direction analysis."  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).   Therefore, if Plaintiffs can demonstrate purposeful direction (which they have), this Court should give no weight to Defendants' arguments regarding purposeful interjection. *Corporate Inv. Business Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir. 1987).

Defendants' argument as to lack of purposeful injection is premised primarily on *Geller*.  As explained in Section 5.1.2, *supra*, however, the extent and type of Defendants' contacts with California go far beyond those in *Geller*. Defendants deliberately attempted to conceal their fraud on the court in the UNC Case by silencing Plaintiffs.  To do this, they sent their fraudulent DMCA

RANDAZZA | LEGAL GROUP

request to Dropbox, headquartered in San Francisco.   Dropbox then, relying on Defendants' misrepresentations, took actions that materially assisted in Defendants' fraud by disabling Plaintiffs' ability to share evidence of Defendants' fraud.   The nature of Defendants' contacts, and their abuse of a California company to conceal their fraud, makes a much more compelling case for purposeful injection than the facts in *Geller*.  This factor weighs in Plaintiffs' favor.

### 5.3.2   Burden on the Defendants

It is not burdensome for Defendants to litigate in California.   Unless the "inconvenience [of litigating in a foreign forum] is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995).   The Ninth Circuit recognized in the '90s that '"in this era of fax machines and discount air travel' requiring [the defendant] to litigate in California is not constitutionally unreasonable." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).   Technology has only become more sophisticated since then, and without a specific articulation as to why litigating here would be burdensome, the Court should not consider this to be a significant burden.

Defendants provide no authority supporting their argument that litigating in this forum would be burdensome.   Unlike in *Geller*, Defendants are not foreign nationals.   They have already retained California counsel, and technological advancements have essentially removed any significant burden to litigating in this forum.  This factor weighs in Plaintiffs' favor.

### 5.3.3   Extent of conflict with the sovereignty of North Carolina

There is no conflict with the sovereignty of North Carolina.   Defendants argue that this factor weighs in their favor because North Carolina has a greater interest in adjudicating this dispute; this is the wrong paradigm.   The inquiry here is

RANDAZZA | LEGAL GROUP

whether a court in California or a court in North Carolina would reach a different result. *See Toeppen*, 141 F.3d at 1323. There is no danger of this, as Plaintiffs assert only federal claims. Analyzing these claims involves the same analysis in any forum, meaning sovereignty concerns are not implicated here. *See id.*

### 5.3.4   California's interest in adjudicating the dispute

California has an interest in this matter. Under this factor, the Court must examine whether the forum is concerned with the outcome of this litigation. *Melcher*, 824 F.2d at 791. Though parties are located in North Carolina, Plaintiffs' claims are focused on Defendants using a California company to conceal fraudulent activities. California has a strong interest in protecting its citizens from out-of-state actors who abuse its companies as part of a criminal enterprise. This factor is, at worst, neutral as to whether exercising personal jurisdiction is appropriate.

### 5.3.5   The most efficient judicial resolution of the controversy

Litigating this matter in California is not inefficient. This factor focuses on the location of evidence and witnesses, but is not weighed heavily in modern litigation "given the modern advances in communication and transportation." *Toeppen*, 141 F.3d at 1323. There is not likely to be a large number of documents in this case or a particularly large amount of discovery, given that most relevant information has already been filed by the parties or is publicly available. Other relevant discovery and evidence resides with Dropbox, in California. To the extent this factor has any weight, it is at worst neutral.

### 5.3.6   The importance of California to Plaintiffs' interest in convenient and effective relief

Having this case decided by a federal court in California is important to Plaintiffs. Complete relief would not likely be possible without Dropbox as a party;

Dropbox might not be subject to personal jurisdiction in North Carolina.  The Terms of Service require Plaintiffs, Mr. Stone, and NCSCV to litigate this dispute in California and California law governs that agreement.   This Court in particular is well-suited to dealing with the factual and legal issues raised by Plaintiffs' claims, as it is more likely to be familiar with the manner in which Silicon Valley tech companies operate.  This factor weighs in Plaintiffs' favor.

### 5.3.7  The existence of an alternative forum

Plaintiffs agree that North Carolina is another forum where this case could be brought solely against Defendants R. Kevin Stone and NCSCV.  However, there are significant questions as to whether a North Carolina court could exercise jurisdiction over Defendant Dropbox.  In fact, Plaintiffs are bound by the Dropbox Terms of Service to bring any action against Dropbox in California.  (*See* **Exhibit 2**.) And, as set forth in the Complaint, Dropbox is a party in order to ensure complete relief.  Moreover, the mere existence of an alternative forum cannot outweigh the other factors that weigh in Plaintiffs' favor.

On balance, the *Rio* factors weigh in Plaintiffs' favor, and the Court should exercise personal jurisdiction over Defendants.

### 5.4    Defendants Consented to Personal Jurisdiction in California

In the Complaint, Plaintiffs pled that "in using Dropbox, [Defendants] consented to personal jurisdiction and venue in the state and Federal courts in San Francisco, California."  (Doc. No. 1 at ¶ 16(a).)  Defendants do not contest this assertion.

Instead, Defendants misrepresent that Plaintiffs are basing consent under Sec. 512(f), under which *Plaintiffs*, in sending the counter-notification, were required to consent to personal jurisdiction in California.  (*See* Doc. No. 9 at 7-8.)

RANDAZZA | LEGAL GROUP

1    Plaintiffs recognize that section 512(f) is asymmetrical.  *See Gelle*r, 533 F. Supp. 2d

2    at 1011.  If this were what Plaintiffs pled, Defendants would be correct.

3         Mr. Stone denies that he or NCSCV have property in California.  (Doc. No.

4    9-1   at   ¶¶ 3 & 5.)     However,   the   DMCA   Takedown   Notice   and   other

5    communications utilized a Rocketmail e-mail account, which, as part of Yahoo!,

6    is a California property.  (*See* Doc. No. 9-1, Exhibits A, B, and C; Declaration of Alex

7    J. Shepard ["Shepard Decl."], attached as **<u>Exhibit 6</u>**.).  In light of this, the Stone

8    declaration must be interpreted to exclude electronic accounts.   Thus, there is

9    no rebuttal or denial that Mr. Stone and NCSCV themselves also maintain

10   Dropbox accounts.  Defendants' evidence shows this, as well.  (*See* Doc. No. 9-1

11   at ¶¶ 5 & 11, Exhibit D.)  And, as Dropbox users, they agreed that "any judicial

12   proceeding to resolve claims relating to these Terms or the Services will be brought

13   in the federal or state courts of San Francisco County, California. Both you and

14   Dropbox consent to venue and personal jurisdiction in such courts."

15        The   Ninth   Circuit   has   found   that   "a   party   has   consented   to   personal

16   jurisdiction when the party took some kind of affirmative act [such as] accepting

17   a forum selection clause . . . ."  *SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007).  This

18   applies to forum selection clauses found in the terms of use of Internet web sites,

19   as well.  *See Twitch Interactive, Inc. v. Johnston*, 2018 U.S. Dist. LEXIS 184300, *10

20   (N.D. Cal. Jan. 22, 2018).  Dropbox's forum selection clause does not apply only

21   to claims between a user and Dropbox.  Furthermore, this Court has found that a

22   forum selection clause can establish personal jurisdiction over a defendant even

23   when the claims are brought by a plaintiff who has not agreed to those terms of

24   service.  *See Binbit Arg., S.A. v. Doe*, 2019 U.S. Dist. LEXIS 203477, *3-5 (N. D. Cal.

25   Nov. 22, 2019).

26

27

RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

1    Plaintiffs' claims relate to the Dropbox Services and Defendants agreed to

2    Dropbox's Terms of Service.  Thus, Defendants consented to personal jurisdiction

3    in this Court.

4    **5.5    This Court is the Most Convenient Forum for This Dispute**

5    As a final argument, Defendants urge the Court to transfer this case to North

6    Carolina if it finds exercising personal jurisdiction would be appropriate.

7    Defendants do not, however, provide any substantive analysis for this argument,

8    instead merely incorporating their arguments as to personal jurisdiction by

9    reference.

10    "To prevail on a motion to dismiss based upon *forum non conveniens*, a

11    defendant bears the burden of demonstrating an adequate alternative forum,

12    and that the balance of private and public interest factors favors dismissal."

13    *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).  A

14    plaintiff's choice of forum is generally given deference in this analysis.  *Ranza v.*

15    *Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015) (*citing Piper Aircraft Co. v. Reyno*, 454

16    U.S. 235, 255 (1981)).  Plaintiffs admit that North Carolina may be an adequate

17    alternative forum,[9] but the balance of interest factors do not weigh in favor of

18    transfer or dismissal.

19    The private interest factors are:

20    (1) Relative ease of access to sources of proof;

21    (2) The availability of compulsory process for attendance of hostile
        witnesses, and cost of obtaining attendance of willing witnesses;

22

23    (3) Possibility of viewing subject premises; and

24    (4) All other factors that render trial of the case expeditious and
        inexpensive.

25    [9]   Plaintiffs acknowledge that, as between Plaintiffs and Mr. Stone/NCSCV,
      the Court is empowered under 28 U.S.C. § 1404(a) to transfer the matter to the

26    U.S. District Court for the Middle District of North Carolina.  Defendants have not,
      however, made any showing that this actually is an adequate alternative forum.

27

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 666 (9th Cir. 2009). Defendants bear the burden of showing that these factors weigh in favor of transfer, but do not address any of them. Relevant documents are stored electronically and can be transmitted across state lines without issue, and technological advancements mitigate any access issues. There is nothing in the record to suggest that there would be issues regarding witness availability in this forum. There are no physical premises at issue to view. And Defendants do not identify any other factors regarding expense or expeditiousness. These factors weight against dismissal and/or transfer.

The public interest factors are:

(1) Administrative difficulties flowing from court congestion;

(2) Imposition of jury duty on the people of a community that has no relation to the litigation;

(3) Local interest in having localized controversies decided at home;

(4) The interest in having a diversity case tried in a forum familiar with the law that governs the action; and

(5) The avoidance of unnecessary problems in conflicts of law.

*Loya*, 583 F.3d at 666. Again, Defendants do not address any of them. There is nothing in the record showing administrative difficulties. Plaintiffs do not demand a jury trial. Defendants have not articulated what local interest there may be in North Carolina in having this dispute resolved there. This is not a diversity case, but if it were this Court is more familiar than a North Carolina court would be with governing law. Because either forum would be required to apply the same law, there is no risk of conflicts of law. These factors weigh against dismissal and/or transfer.

RANDAZZA | LEGAL GROUP

**6.0    CONCLUSION**

Mr. Stone and NCSCV conspired to abuse the courts of North Carolina. They targeted Plaintiffs' California-based account and directed a takedown notice at a California company.  This Court has personal jurisdiction and lawful authority over Defendants.   However, in the event the Court agrees with Defendants, "[b]ecause a lack of personal jurisdiction is a defect capable of being cured," the Court should transfer the case, pursuant to 28 U.S.C. § 1631, "instead of dismissing it outright."  *Rain Design, Inc. v. Spinido, Inc*., No. 17-cv-03681-HSG, 2019 U.S. Dist. LEXIS 21087, at *1 (N.D. Cal. Feb. 8, 2019). For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.

Dated:  February 28, 2020         Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza (CA SBN 269535)
Alex J. Shepard (CA SBN 295058)
Jay M. Wolman (*pro hac vice* forthcoming)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
Fax: 305-437-7662
ecf@randazza.com

*Attorney for Plaintiffs*
*Thomas Gregory Doucette &*
*Law Offices of T. Greg Doucette, PLLC*

Case No. 4:19-cv-08148-HSG

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on February 28, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Crystal Sabala
Employee,
Randazza Legal Group, PLLC